IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

PAUL CURTIS PEMBERTON,                )
                                      )
                Petitioner,           )
                                      )
v.                                    )    Case No. 23-CV-025-RAW-JAR
                                      )
MICHAEL MILLER, Warden,               )
                                      )
                Respondent.           )

**OPINION AND ORDER**

This action is before the Court on Respondent's motion to dismiss Petitioner's petition for a writ of habeas corpus as barred by the statute of limitations. (Dkt. 11).[1] Petitioner is a pro se prisoner in the custody of the Oklahoma Department of Corrections who is incarcerated at Allen Gamble Correctional Center in Holdenville, Oklahoma. He is attacking his convictions in McIntosh County District Court Case No. CF-2004-57 for First Degree Murder--Malice Aforethought (Count 1) and Unlawful Possession of a Firearm After Former Felony Conviction (Count 2). (Dkt. 12-8 at 1).[2] The Court has before it for consideration Petitioner's habeas corpus petition with exhibits (Dkt. 1), Respondent's motion to dismiss and brief in support with exhibits (Dkts. 11, 12), Petitioner's response to the motion to dismiss with exhibits (Dkt. 14), and Petitioner's objection to the motion to dismiss (Dkt. 17).

The Court has carefully reviewed the record and construes Petitioner's pro se

---

[1] The Court's citations refer to this Court's CM/ECF header pagination.

[2] Petitioner's case apparently was referred to federal authorities based on the same conduct underlying his state murder conviction. On February 23, 2021, an Indictment was issued in *United States v. Pemberton*, No. 21-CR-12-JFH (E.D. Okla). (Dkt. 12-5). He was tried by jury and convicted under 18 U.S.C. §§ 1151, 1153 for Murder in Indian Country, and under 18 U.S.C. § 924(j)(1) for Causing the Death of a Person in Violation of 18 U.S.C. § 924(c). (Dkt. 12-6). On June 21, 2022, Petitioner was sentenced to "Life as to each of Counts 1 & 2 of the Indictment" with the terms of imprisonment to be served concurrently with one another. (Dkt. 12-7).

pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). This relaxed standard, however, does not relieve his burden of alleging sufficient facts on which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**I.     Petitioner's Claims.**

Petitioner raises the following eight grounds for habeas corpus relief:

**Ground One:**  The trial court erred in denying Petitioner's Sixth Amendment rights by not allowing Petitioner to represent himself pro se. (Dkt. 1 at 7).

**Ground Two:**  The State of Oklahoma lacked jurisdiction over the homicide of Deanna Pemberton because the tract of land where the crimes [are] alleged to have occurred is in "Indian Country" violating [Petitioner's] right to be heard, right to fairness and right to procedural due process guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution. *Id*. at 12.

**Ground Three:**  The State of Oklahoma lacked jurisdiction over crimes allegedly committed by [Petitioner] in Indian Country becausew [sic] he is an enrolled citizen of the Muscogee (Creek) Nation and his arrest and prosecution violated his Fifth and Fourteenth Amendment rights of the United States Constitution. *Id.* at 17.

**Ground Four:**  The petitioner's arrest, seizure, and search of his person and effects and his vehicle was in violation of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, as well as Article II, Section[s] 21 and 30 of the Oklahoma Constitution; and he was not provided "an opportunity for full and fair litigation" during the motion to suppress proceeding in violation of Article II, Section 7 of the Oklahoma Constituion [sic] and the Fifth and Fourteenth Amendments of the United States Constitution. *Id.* at 18.

**Ground Five:**  Petitioner's statements were inadmissible because they were made following an illegal, investigatory, pretextual arrest which was not based on probable cause in violation of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. *Id.* at 22.

**Ground Six:**  The prosecutor knowingly used perjured testimony to obtain this conviction, the prosecutor knew or should have known the testimony was false, establishing factual and actual innocence, and this prejudice resulted in conviction in violation of the Due Process Clause, right to fair trial, and right to be heard on Petitioner's theory of defense infringing upon Petitioner's Fifth and Fourteenth Amendment rights of the United States Constitution. *Id.* at 26.

**Ground Seven:**  The petitioner's conviction was the result of an inadequate

pre-trial investigation by trial counsel, because they were ineffective by performing deficeintly [sic], and the deficiency was prejudicial to the outcome that resulted in conviction of one who is actually innocent[.] Counsel utterly failed to defend against the charges, rendering counsel's representation presumptively inadequate. This violated Petitioner's right to the effective assistance of counsel as gauranteed [sic] by the Sixth Amendment of the United States Constitution. *Id*. at 41.

**Ground Eight:** The petitioner recieved [sic] ineffective assistance of counsel on his direct appeal, in violation of the Sixth Amendment of the United States Constitution and Article II, Section 20 of the Oklahoma Constituion [sic]. *Id*. at 46.

## II. The Antiterrorism and Effective Death Penalty Act of 1996

Respondent alleges the petition was filed beyond the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996, codified at 28 U.S.C. § 2244(d) (AEDPA). (Dkts. 11, 12). The AEDPA gives state prisoners a one-year statute of limitations to seek a writ of habeas corpus from federal courts as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### A. Untimeliness under 28 U.S.C. § 2244(d)(1)(A).

Petitioner was tried by jury and convicted in McIntosh County District Court Case No. CF-2004-57 (Dkt. 12-2 at 14), and his Judgment and Sentence was entered on December 20, 2004. (Dkt. 12-8). He directly appealed the convictions to the OCCA, which affirmed his convictions on March 29, 2006. *Pemberton v. State*, No. F-2004-1256 (Okla. Crim. App Mar. 29,, 2006) (unpublished) (Dkt. 12-1). His convictions, therefore, became final 90 days later on June 27, 2006. *See* Sup. Ct. R. 13(1) (providing 90 days after entry of the judgment to seek review with the United States Supreme Court). Absent a tolling event, the one-year limitation period expired on June 28, 2007. *See Gonzales*, 565 U.S. at 150; *Harris v. Dinwiddie*, 642 F.3d 902, 906 n. 6 (10th Cir. 2011); *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003). The Court finds, and Petitioner concedes in his petition, that the petition is untimely under § 2244(d)(1)(A). (Dkt. 1 at 4).

From 2008 to 2021, Petitioner filed numerous applications and motions in the state district court and corresponding writs for extraordinary relief in the OCCA. (Dkt. 12-2; Dkt. 12-3). Because these filings all post-dated the expiration of Petitioner's AEDPA limitation period, and because he does not make any argument for equitable tolling that would require consideration of whether he has been diligent in pursuing his state-court remedies, these filings and rulings are not included here.

### B. Untimeliness under 28 U.S.C. § 2244(d)(1)(D)

#### 1. Trial Testimony

Petitioner alleges that while his petition is untimely under § 2244(d)(1)(A), "newly presented" evidence introduced at his federal trial should grant him an alternative triggering date under 28 U.S.C. § 2244(d)(1)(D). (Dkt. 1 at 3). Under § 2244(d)(1)(D), a petitioner has one year from the time that a new "factual predicate" for the claim or claims could have been

discovered "through the exercise of due diligence." To avail himself of § 2244(d)(1)(D), Petitioner need not show "the maximum feasible diligence but only due, or reasonable diligence." *Starns v. Andrews*, 524 F.3d 612, 618 (5th Cir. 2008) (quoting *Moore v. Knight*, 368 F.3d 936, 938 (7th Cir. 2004)) (internal quotes omitted). *See also Lott v. Coyle*, 261 F.3d 594, 605 (6th Cir. 2001) (burden lies with petitioner to show he exercised due diligence). Respondent maintains that Petitioner has failed to show the exercise of due diligence as to his claim. (Dkt. 12 at 14).

In an attempt to show that testimony at his 2004 state trial was different or inconsistent with testimony given by the same witnesses in his 2021 federal trial, Petitioner cites to the state trial transcripts. (Dkt. 1 at 23-48). Respondent argues that it is clear that any "perjury" or false statements made by the state's witnesses at the state trial should have been easily discoverable through even minimal diligence in 2004. While Petitioner claims he only discovered the allegedly false statements made by the State's witnesses when he heard them testify at his federal trial, if the statements truly were false, Petitioner would have recognized that fact when the statements originally were made in the state trial. *See Taylor v. Martin*, 757 F.3d 1122, 1124 (10th Cir. 2014). *See also Mehdipour v. Whitten*, Case No. CIV-19-206-C, 2019 WL 4858346, at *2 (W.D. Okla. July 23, 2019) (unpublished) ("Where a habeas claim is based on alleged false testimony, the fact of the false testimony is generally discovered or discoverable at the time the witness gives the false testimony[.]").

Petitioner claims that the testimony given by nearly all of the State's witnesses in his state trial was perjured, inaccurate or coerced; the result of illegal searches or interviews/interrogations due to lack of jurisdiction; or based on the ineffectiveness of his trial counsel. (Doc. 1 at 28-45). First, as to Petitioner's claim that the State's witnesses' trial testimony was perjured, inaccurate, or coerced--the fact of the allegedly false testimony was

5

generally discoverable at the time the testimony was given in 2004. The Tenth Circuit has rejected such arguments before:

> Our unpublished case, *Craft v. Jones*, 435 F. App'x 789 (10th Cir. 2011) (unpublished), is persuasive. There, the petitioner sought to avail himself of § 2244(d)(1)(D) because he had "new evidence in the form of an affidavit." *Id*. at 791. The affiant claimed that he was present during the stabbing for which the petitioner was convicted, and that the petitioner had committed the stabbing in self-defense. *Id*. This court held that the "date on which the factual predicate of the claim . . . could have been discovered" was the date of the stabbing, not the date of the affidavit. *Id*. (quoting 28 U.S.C. § 2244(d)(1)(D)). If the affiant was present at the stabbing, as he claimed, then the petitioner would have been aware that the affiant was a witness to the event long before the affidavit. *Id.*

*Taylor*, 757 F.3d at 1124 (citing *Craft*, 435 F. App'x at 791). *See also Mehdipour*, CIV-19-206-C, 2019 WL 4858346 at *2.

Restated, the Tenth Circuit found "Mr. Taylor knew or should have known that Mr. Cheatham's testimony was false when he heard Mr. Cheatham testify to something Mr. Taylor knew to be untrue." *Taylor*, 757 F.3d at 1123-24. The same is true in this case. If, as Petitioner alleges, the State's witnesses lied on the stand regarding their observations and investigation concerning Petitioner's crimes, that fact would have been available to him at the time of the state trial on October 25-27, 2004. (Dkt. 12-9, Trial Transcripts Vol. I for McIntosh District Court Case No. CF-2004-57; Dkt. 12-10, Trial Transcripts Vol. II for McIntosh District Court Case No. CF-2004-57; Dkt. 12-11, Trial Transcripts Vol. III for McIntosh District Court Case No. CF-2004-57).

As set forth above, the statute of limitations began to run under § 2244(d)(1)(D) when the factual predicate of the claim could have been discovered through exercise of due diligence, not when it was actually discovered. Section 2244(d)(1)(D) provides petitioners with a later accrual date than § 2244(d)(1)(A) only "'if vital facts could not have been known'" by the date the appellate process ended. *Schlueter v. Varner*, 384 F.3d 69, 74 (3d

Cir. 2004) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)). Therefore, the "due diligence" clock starts ticking when a person knows or through reasonable diligence could discover the vital facts, regardless of when--if any--legal significance is discovered. It is clear the allegedly false statements made by the State's witnesses in Petitioner's 2004 state trial were available in 2004. *See Taylor*, 757 F.3d at 1123-24; *Mehdipour*, CIV-19-206-C, 2019 WL 4858346, at *2. For Petitioner, the "due diligence" clock started to run when Petitioner observed the allegedly false statements in October 2004 (Dkt. 12-9), even before his convictions became final. As such, § 2244(d)(1)(D) does not provide him a later triggering date than § 2244(d)(1)(A) or render his petition timely.

### 2.     Ineffective Assistance of Appellate Counsel

Petitioner claims in Ground Eight that he received ineffective assistance of appellate counsel in his direct appeal. He asserts he first raised this claim as his fifth proposition in his July 7, 2020, application for post-conviction relief. (Dkt. 1 at 46). Although Petitioner's allegations are unclear, according to the state district court's order entered on October 21, 2020, the fifth proposition raised a claim "on the narrow issue of whether [the state district court] would have jurisdiction under the rationales of *McGirt v. Oklahoma*, 140 S.Ct. 2020)." (Dkt. 1-3 at 5). The issue was set for a status conference regarding an evidentiary hearing. *Id.* at 6. In a November 3, 2021, order denying post-conviction relief, the state district court found there was no need for an evidentiary hearing. (Dkt. 1-3 at 9). Petitioner's application had raised three specific issues related to jurisdiction: "1) the Petitioner's status as an Indian under federal law; 2) if the offense constitutes a major crime under the *Major Crimes Act*. 18 U.S.C.A. § 1153; and 3) whether the crime occurred on the Creek Reservation." (Dkt. 1-3 at 12).

The state district court further found that "*McGirt* has prospective application, but

'was never intended to annul decades of final convictions." (Dkt. 1-3 at 13 (quoting *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 693 (Okla. Crim. App. Aug. 12, 2021)). Therefore, the state district court denied Petitioner's application for post-conviction relief. (Dkt. 1-3 at 13). Petitioner complains that the state district court failed to apply *Strickland v. Washington*, 466 U.S. 668, 687, to address his ineffective assistance of appellate counsel claim. (Dkt. 1 at 46). He also contends the state district court should have analyzed any jurisdiction claim under *Solem v. Bartlett*, 465 U.S. 463, 470-73 (1984), because his post-conviction application was filed on July 8, 2020, prior to the *McGirt* decision. (Dkt. 1 at 49).

Respondent asserts the latest date Petitioner reasonably could have discovered the ineffectiveness of his appellate counsel would have been the date his appellate brief was filed, June 20, 2005, which was prior to Petitioner's convictions even becoming final. *See Reyes v. Thaler*, 2012 WL 1116748, at *2 n.4 (N.D. Tex. April 2, 2012) (unpublished) (stating that petitioner cannot invoke § 2244(d)(1)(D), because he could have discovered the factual predicate of his ineffective assistance claims at the time of trial when counsel committed the alleged acts and omissions).

Further, to the extent Petitioner is claiming that *McGirt v. Oklahoma*, 591 U.S. __, 140 S. Ct. 2452 (July 9, 2020), or *Sharp v. Murphy*, __ U.S. __, 140 S. Ct. 2412 (July 9, 2020), gave him a new factual predicate because he is an Indian and his crimes occurred on a Cherokee allotment, *McGirt* and *Murphy* provide the legal, not factual predicate for Petitioner's claims, and Petitioner was well aware of his Indian County jurisdictional claims, as he began to assert the jurisdictional argument in state court in 2018. (Dkt. 12-12, Petition for Writ of Habeas Corpus and Brief in Support in OCCA Case No. HC-2018-1247). *See Johnson v. Louthan*, No. 22-5064, 2022 WL 4857114, at *3 (10th Cir. Oct. 4, 2022) (unpublished) (rejecting petitioner's argument that his Indian-country jurisdictional claim

8

could be timely under § 2244(d)(1)(D) and reasoning, in part, that a reasonably diligent petitioner could have discovered the factual predicate of the claim before the *McGirt* decision, because "the absence of an Act of Congress disestablishing the Creek reservation has been known in this circuit since 2017"); *Mitchell v. Nunn*, 601 F. Supp. 3d 1076, 1083 (N.D. Okla. April 28, 2022) (rejecting petitioner's argument that *McGirt* and post-*McGirt* state court decisions provided factual predicate for claim challenging the convicting court's jurisdiction over crime committed in Indian country and made that claim timely under § 2244(d)(1)(D), when facts of that case demonstrated that petitioner first asserted the claim in state court in March 2017). For all the above reasons, the Court finds Petitioner has failed to show he is entitled to an alternative triggering date for his AEDPA statute of limitations under 28 U.S.C. § 2244(d)(1)(D).

    **C.**    **Equitable Tolling**

Equitable tolling of § 2244(d)(1)'s one-year statute of limitations is available "only in rare and exceptional circumstances." *York v. Galetka*, 314 F.3d 522, 527 (10th Cir. 2003). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). The petitioner carries the strong burden of establishing equitable tolling. *Yang v. Archuleta*, 525 F.3d 925, 928-29 (10th Cir. 2008). Because Petitioner has failed to allege or argue equitable tolling, the Court finds this remedy is not justified.

    **D.**    **Actual Innocence**

Petitioner alleges his untimely habeas petition should be considered by way of the actual innocence gateway. (Dkt. 1 at 4). "A claim of actual innocence may toll the AEDPA

statute of limitations." *Laurson v. Leyba*, 507 F.3d 1230, 1232 (10th Cir. 2007) (citing *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)). A petitioner's claims of innocence, however, must amount to a "colorable showing of factual innocence." *Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997).

> Such a showing does not in itself entitle the petitioner to relief but instead serves as a "gateway" that then entitles the petitioner to consideration of the merits of his claims. *Brecheen v. Reynolds*, 41 F.3d 1343, 1357 (10th Cir. 1994) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). In this context, factual innocence means that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see also Murray v. Carrier*, 477 U.S. 478, 496 ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."). Factual innocence requires a stronger showing than that necessary to establish prejudice. *Schlup*, 513 U.S. at 326.

*Demarest*, 130 F.3d at 941-42. Moreover, the Supreme Court has recognized that "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

As an initial matter, most, if not all of Petitioner's "actual innocence" claim rests on his jurisdictional claim and alleged false testimony. (Dkt. 1 at 4-7). There is, however, no allegation of bad faith in the State's prosecution. Petitioner also claims actual innocence based on the evidence presented at his federal trial. *Id.* at 3-6, 26-41).

The OCCA made the following factual findings in Petitioner's direct appeal, which are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

> In September 2003, the 33 year old [Petitioner] moved in with his father and step-mother, Donald and Deanna Pemberton, in Checotah. Donald Pemberton was retired from his own business contract pumping in the oil fields. Pemberton had tried to help [Petitioner] establish his own business, on at least two prior occasions. However, [Petitioner] proved to be irresponsible and he was never able to make a go of the businesses.

> [Petitioner] had a good relationship with his father and step-mother. In particular, Deanna, the victim in this case, washed his clothes, prepared his meals, cleaned his room and basically took care of [Petitioner]. This relationship changed when [Petitioner] wrecked Deanna's car in October. [Petitioner] and Deanna began to argue frequently. Deanna stopped washing [Petitioner]'s clothes and cleaning his room. In November, the two got into a bad argument, and [Petitioner] was asked to move out. By Christmas, [Petitioner] still had not saved enough money to move out of the Pemberton's home. With money from his father, [Petitioner] finally moved out of the house shortly after Christmas.
>
> [Petitioner] moved to Muskogee. On April 4, 2004, at about 10:00 a.m., [Petitioner] called his father from a pay phone in Muskogee and asked if he could have Pemberton's old satellite receiver. While Pemberton was talking to [Petitioner], the victim picked up another phone line in the house. Hearing [Petitioner] on the other end, Deanna shouted at [Petitioner] to leave them alone and that he was not getting anything from them.
>
> According to [Petitioner]'s statements to the police, he hung up the pay phone in Muskogee furious with his step-mother. He drove home, got his gun and some money. He then drove to Wal-Mart and purchased 550 rounds of ammunition for the gun. [Petitioner] then drove approximately 50 miles to Checotah. Arriving at approximately 3:30 p.m., [Petitioner] walked through the garage and into the Pemberton's home. His father was in the den, sitting in his recliner, watching television when [Petitioner] walked in. Ignoring his father's suggestions to leave, [Petitioner] turned toward the hallway. About this time, the victim walked down the hallway, shouting at [Petitioner] to leave the house. [Petitioner] shot her. By his own words he "raised the gun and shot her." [Petitioner] initially fired at the victim from across the room, causing her to spin around and fall to the ground. He then walked over to her and continued to shoot as she lay on the ground. [Petitioner] fired till [sic] the gun was empty. He continued to fire even after all six rounds of ammunition had been spent.
>
> Donald Pemberton went to check his wife's pulse. As he knelt beside her, he heard the gun click as [Petitioner] attempted to continue firing the gun. Once [Petitioner] realized the gun was empty he threw the gun on the floor and told his father to call the police. [Petitioner] told his father, "we'll [sic] you've destroyed my life, now I've destroyed yours."
>
> Four of the bullets struck the victim in the head and one struck her in the chest. One of her wounds was consistent with being shot while in a prone position. She died at the scene.

*Pemberton v. State*, No. F-200401256, slip op. at 1-3 (Okla. Crim. App. Mar. 29, 2006).

(Dkt. 12-1 at 1-3).

11

Petitioner argues in his 400-plus page petition and attached exhibits that his murder conviction was the result of unlawful searches, involuntary confessions, perjured testimony, ineffective assistance of trial counsel, and prosecutorial misconduct, without which he would have been found not guilty. (Dkt. 1 at 26-45). In support of this claim, he attaches a multitude of documents to his petition, including numerous pages of transcripts from his federal trial--without context--that he claims show that several of the State's witnesses "perjured" themselves, although it is unclear whether he is claiming the alleged perjury occurred at his state or federal trial. (Dkt. 1-6).

Respondent alleges Petitioner's claim of actual innocence fails, because it is not comprised of new, reliable evidence that was not presented at trial. The Tenth Circuit has held that the evidence is "new" as long as it is "newly presented," and it need not be "newly discovered." *Fontenot v. Crow*, 4 F.4th 982, 1032 (10th Cir. 2021). It also made clear that actual innocence claims "must be based on more than the petitioner's speculations and conjectures. The gateway claim must 'be credible' and requires 'new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) (quoting *House v. Bell*, 547 U.S. 518, 537 (2006)). *See also Herrera v. Collins*, 506 U.S. 390, 417-418 (1993) (rejecting actual innocence claim based on affidavits which, aside from one provided by an individual who was nine years old at the time of the crime, largely consisted of hearsay); *Fisher v. Pacheco*, Case No. 21-8070, 2022 WL 420480, at *1 (10th Cir. Feb. 11, 2022) (unpublished) (rejecting actual innocence claim where the petitioner argued that his claim of self-defense was supported by the discovery of two pieces of allegedly exculpatory evidence contained within pretrial discovery materials: 1) statements made by petitioner's young children that allegedly were different from the inculpatory

statements they gave to police; and 2) a "cryptic notation" in a police report alluding that the petitioner's wife's diary described weapons and booby traps, because such evidence was not reasonably reliable).

Here, the Court agrees with Respondent that "Petitioner's bald assertions and reference to testimony given in a federal trial are largely Petitioner's own characterizations, sweeping conclusions, and--at times--nonsensical descriptions of testimony presented by various witnesses and are wholly unsupported by any credible documentation or evidence save for Petitioner's own statements, speculation, and conjecture." (Dkt. 12 at 21 (citing Dkt. 1 at 28-45)). The Court finds this evidence is insufficient to support a claim of actual, factual innocence.

Further, none of the allegedly "new" evidence shows that Petitioner is innocent of the crimes of which he was convicted. In fact, the evidence showed that he confessed to multiple law enforcement officers, and the OCCA determined his statements to law enforcement were voluntary. *Pemberton*, No. F-2004-1256, slip op. at 13-16 (Dkt. 12-1). The OCCA's recitation of the facts concerning Petitioner's confession stated the following:

> When Deputy Hall arrived [on the murder scene] several minutes [after the shooting], [Petitioner] was sitting on the tailgate of his truck parked in the driveway. Shortly thereafter, Sheriff Coleman arrived. By this time, [Petitioner] was lying on the ground. [Petitioner] looked up at the Sheriff and said, "she drove me crazy." [Petitioner] said he did not want to talk with anyone except the Sheriff. [Petitioner] was taken to the Sheriff's car where he was read his rights. [Petitioner] waived those rights and admitted he drove from Muskogee with the gun and shot the victim. When asked why he shot the victim, [Petitioner] replied, "the bitch drove me crazy." When asked why he shot her six times, [Petitioner] said that was all the bullets he had.
>
> [Petitioner] was transported to the county jail by Deputy Jackson. On the way, [Petitioner] cried a little and commented, "they're going to fry me, aren't they?" [Petitioner] said he didn't know why he shot his step-mother, that he was mad, and that he should never have gone into the house. Upon entering his cell, [Petitioner] announced, "I shot my step-mother," "I shot her six times."

13

> At approximately 5:20 p.m., that day, [Petitioner] was interviewed by OSBI Agent Jones. The interview, which was tape-recorded, was conducted in an office at the Sheriff's Department. [Petitioner] waived his rights and agreed to speak with Agent Jones without the benefit of legal counsel. [Petitioner] admitted to shooting the victim, essentially setting out the facts as recited above. In addition, [Petitioner] said he had drunk five 24 ounce beers that day, before the shooting, and one beer after the shooting. He said that the victim had cursed at him on the phone. He admitted to shooting the victim as she walked down the hallway and then again as she lay on the floor. When asked why he was so upset, he said he was mad at his father because he had turned his business over to his sister and not him, and that he felt his father was responsible for an injury he had received several years before while trying to unclog a drain line.

*Pemberton*, No. F-2004-1256, slip op. at 3-4 (Dkt. 12-1).

Even with the purported discrepancies in the witness testimony at his state and federal trials, the Court finds the other evidence presented at the state trial, such as Petitioner's confession,[3] physical evidence recovered from the scene, and Petitioner's father's eyewitness testimony overwhelmingly demonstrated Petitioner's guilt. Petitioner has not come close to showing that it is "more likely than not any reasonable juror would have reasonable doubt" about Petitioner's convictions, *Fontenot*, 4 F. 4th at 1031 n.20 (citing *House v. Bell*, 547 U.S. 518, 538 n.30), if they hear the alleged minor discrepancies in witness testimony between the two trials. *See Creller v. Crow*, No. 22-6062, 2022 WL 16964948, at *5 (10th Cir. Nov. 16,

---

[3] The Court acknowledges that *Fontenot* also involved a confession, yet the Tenth Circuit found the actual innocence gateway was satisfied. *Fontenot*, 4 F.4th at 1055-56 (holding trustworthy eyewitness accounts that cast doubt on Fontenot's confession and "interlock with statements made at or prior to [Fontenot's] new trial" were enough to open the actual innocence gateway). In the present case, however, the OCCA found the record supported the trial court's finding of voluntariness as to Petitioner's statements to police after his arrest, because "the mere fact that [Petitioner] may have been intoxicated does not render his statement inadmissible" and there was "no indication in either situation in the present case that [Petitioner] was unable to understand the meaning and effect of the rights read to him." *Pemberton*, No. F-2004-1256 at 15 (Dkt. 12-1). The OCCA further stated that the "specificity of detail [Petitioner] provided concerning his activities leading up to and including the shooting demonstrates he was fully alert." *Id.* at 15. Petitioner's self-serving statements alone are not enough to open the actual innocence gateway. In addition, unlike *Fontenot*--in which the Tenth Circuit stated that the newly presented evidence was more likely to open the actual innocence gateway because of the weakness of the State's case--Petitioner never challenges the sufficiency of the State's evidence, only that his confession may have been the product of either intoxication or coercion, both of which the OCCA rejected in finding his confession was voluntary. *Pemberton*, No. F- 2004-1256 at 13-16 (Dkt. 12-1 at 13-16).

2022) (unpublished) (stating petitioner's "new evidence" in the form of an affidavit his son submitted "generally corroborating [p]etitioner's version of events" failed to meet the actual innocence standard as other evidence at trial, such as a confession by petitioner and medical testimony, demonstrated petitioner's guilt).

Regarding Petitioner's alleged "recantation"[4] during his federal suppression hearing where he claimed that Deanna Pemberton was already dead when he entered the home, these "self-serving assertions of innocence do not constitute credible, reliable evidence sufficient to show actual innocence. *Resinger v. Bolt*, No. CIV-19-161-JHP-KEW, 2020 WL 618822, at * 2 (E.D. Okla. Feb. 10, 2020) (unpublished). *See also Pfeil v. Everett*, 9 F. App'x 973, 979 (10th Cir. 2001) (unpublished) ("two self-serving assertions of innocence" are "insufficient to make a colorable showing of innocence").

Petitioner also asserts the testimony of Agent Dalley, combined with the testimony of Dr. Sibley regarding Ms. Pemberton's wounds and the trajectory of the shots fired in this case, prove that Petitioner could not have fired the gun in such a way to have caused one of the six gunshot wounds to Ms. Pemberton. (Dkt. 1 at 36-38). This claim, without more, is not enough to show that he did not murder Ms. Pemberton. The jury heard all this evidence from Agent Dalley and Dr. Sibley in both his State and federal trials, and both juries convicted him. Therefore, it cannot be said that this evidence is "new" or demonstrates actual innocence under *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new

---

[4] Petitioner alleges the jury in his state case did not hear evidence that he "recanted" his confession on April 19, 2002, citing his post-conviction application. (Dkt. 1 at 29). Respondent maintains Petitioner did not "recant" his statements about Ms. Pemberton's murder, only that he "had consumed the equivalent to a twelve pack of beer" before being questioned. (Dkt. 12 at 17-18 n.8). As set forth above, the OCCA fully considered that issue in Petitioner's direct appeal and determined his statements to police were admissible. *Pemberton*, No. F-2004-1256, slip op. at 3-4, 14-16 (Dkt. 12-1). Also, the jury heard ample evidence from several witnesses regarding Petitioner's alcohol consumption the day of the murder during the State trial. *Id.*

evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.") (citations omitted).

Finally, Petitioner claims that his father, the government's eyewitness in both the state and federal trials, testified inconsistently in the 2021 federal trial when compared to the 2004 state trial. (Dkt. 1 at 36). This allegation is insufficient to meet the standard for actual innocence. Respondent contends Petitioner's actual complaint is that Mr. Pemberton consistently claimed that Petitioner shot Ms. Pemberton once "real close to her head," while Dr. Sibley found no indication of a shot from that close a range. (Dkt. 1 at 34-36). Even if Petitioner's assertion is correct, however, this evidence does not prove that Petitioner did not shoot Ms. Pemberton, and it serves only as potential impeachment evidence for Mr. Pemberton's statements and cannot serve as the basis for an actual innocence claim. *See Stafford v. Saffle*, 34 F.3d 1557, 1562-62 (10th Cir. 1994).

Petitioner is basing his actual innocence claim on evidence presented in his federal trial. Respondent points out, however, that like the state jury, the federal jury convicted him of murder beyond a reasonable doubt. Petitioner, therefore cannot show that in light of this evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Fontenot*, 4 F.4th at 1030.

### III. Conclusion

After careful review, the Court finds that Petitioner's petition for a writ of habeas corpus is untimely under the AEDPA. Therefore, the petition must be dismissed.

### IV. Certificate of Appealability

The Court further finds Petitioner has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its

16

procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See also* 28 U.S.C. § 2253(c). Therefore, Petitioner is denied a certificate of appealability. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

**ACCORDINGLY,** Respondent's motion to dismiss time-barred petition (Dkt. 11) is granted, and Petitioner is denied a certificate of appealability. Petitioner's motion for an evidentiary hearing (Dkt. 13) is denied as moot.

**IT IS SO ORDERED** this 21st day of March 2024.

_____
HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE